Betts v. Francis.

---

### FREDERICK B. BETTS v. JOHN M. FRANCIS.

1. Title to goods and chattels may pass by gift *inter vivos* when there is a delivery of the property. Mere delivery of the goods will not in general pass the title; there must be an intention to give accompanying the act of delivery in order to consummate the gift, or the circumstances attending the delivery of the goods must be such as ordinarily accompany a gift, inducing the donee to believe that a gift was intended. If that be the case, the title to the goods will pass, although it may not be the secret intention of the donor to make a gift.
2. When a gift is completed by delivery and acceptance of the chattel, it is irrevocable. So long as there is no delivery and acceptance it may be revoked.

In replevin. On rule to show cause why verdict should not be set aside.

This was an action brought in this court, and upon the trial of the issue at the Hudson Circuit, at the term of December, 1861, a verdict was rendered for the plaintiff for six cents damages. On the coming in of the *postea*, a rule was obtained that the defendant should show cause why the verdict should not be set aside, and a new trial granted. The principal reason assigned was, that the judge at the trial charged the jury erroneously in regard to the legal title to the property in dispute.

The rule was argued by *C. H. Winfield*, for the plaintiff, and *J. R. Wortendyke*, for the defendant.

The opinion of the court was delivered by the

CHIEF JUSTICE. The point litigated in this action of replevin at the circuit was whether the property replevied was in the plaintiff in replevin, Frederick B. Betts, or in one Archibald G. Rogers, who claimed it by virtue of a mortgage upon the same, executed by Frederick F. Betts, the son of Frederick B. Betts, to secure a debt due to Rogers, in part for money borrowed at the time of the execution of the mortgage, and in part for a debt then due from the mortgagor to the mortgagee.

At the time of the execution of the mortgage the son was, with his wife, keeping house in Jersey City, using the furniture, the subject of the replevin, for that purpose, and being in its sole and exclusive possession. Before Rogers would advance the money on the mortgage to Betts, who applied to him for it, he required him to make an affidavit that the property was his, which he did.

Previous to this time, Betts the younger had been insolvent, and had been relieved from his debt by the two-thirds act in New York, where he resided at that time. Rogers was one of his creditors. He married, and for a time lived with his father in Jersey City.

His father hired the house in Jersey City for his son, and purchased the furniture in controversy, and placed it in the house for his son's use. The son and his wife then commenced housekeeping.

At the time of the purchase of the furniture, and putting it in the son's possession, nothing was said by the father to the son as to the ownership of the furniture; the father did not intimate that the furniture was not to be a gift from him to his son.

On the trial, the father testified that he did not intend to give the furniture to his son when he placed it in the house, and intended to retain the property in himself. He said he never removed any of the goods while his son was keeping house; that he could not say what acts of ownership he had exercised over the goods while there; that his son, his wife, and his son's mother-in-law lived in the house; that he put the goods there for him to enjoy. The son went to the house to live in the spring of 1859, and left there in February, 1861. The son, during this time, was in the employ of the father, at a salary of $2000.

Upon this state of facts, the judge at the circuit refused to submit the question, whether the property had been given by the father to the son, to the jury; charging that the son had no claim to the property as against the father, and as a consequence, that the mortgage given by him to Rogers was invalid.

Title to goods and chattels may pass by gift *inter vivos* when there is a delivery of the property. Mere delivery of the goods will not in general pass the title: there must be an intention to give accompanying the act of delivery in order to consummate the gift, or the circumstances authorizing the delivery of the goods must be such as ordinarily accompany a gift, inducing the donee to believe that a gift was intended; if that be the case the title to the goods will pass, although it may not be the secret intention of the donor to make a gift.

The donor may not deliver the property to the donee with

all the usual circumstances attending a gift, and denoting it, suffer the donee 'to remain in possession for an indefinite period, and then, under perhaps changed circumstances, divest the apparent owner of his property by coming upon the stand, and declaring that it was not his intention to make a gift.

When a gift is completed by delivery and acceptance of the chattel it is irrevocable. So long as there is no delivery and acceptance it may be revoked. 2 *Kent's Com.* 438 ; 2 *Bl. Com.* 441.

The law will raise the presumption of a gift by father to son from circumstances where it would not be implied between strangers. *Ridgway* v. *English*, 2 *Zab.* 409.

On a purchase of land by the father in the name of the son a trust will not result to the father, unless there be other evidence to rebut the presumption of a gift or advancement arising from the relation of parent and child. *Lewin on Trusts* 207, and cases there cited.

When a son or daughter marries, and is about setting up a separate establishment, and the father provides the necessary outfit for housekeeping, such as proper furniture for the dwelling house, and transfers the possession to the son or daughter without qualification or reservation made at the time, a presumption arises that the transaction is a gift, prompted by natural affection of the donor, and this presumption should prevail. But it is a presumption of fact for the jury, and not of law for the court. This presumption is liable to be rebutted by other evidence showing that the donor and donee did not so consider it.

It is a presumption of fact, because such conduct is universally considered as denoting a gift of the chattels.

What would be thought of a father who would furnish his daughter's house, put his son-in-law in possession of the furniture, and in a year or two demand possession, and bring replevin for its recovery ?

In what does the case of furnishing a son's house differ from the one just put? The usage of society is the same in

both cases. The case of the furniture of a house seems to raise the strongest possible presumption 'of a gift—much stronger than putting the son in possession of a horse or a slave.

The course of judicial decision on this point has not been uniform, and for the reason, perhaps, that in the cases that have come before the courts the question has arisen between the father seeking to exempt the property from seizure for the debts of the son or son-in-law and his creditors. 2 *Phil. on Ev.* 289, 294 ; *Hollowell* v. *Spinner*, 4 *Iredell* 165 ; *Farrel* v. *Perry*, 1 *Hay'd Rep.* 2 ; *Carter's Ex'rs* v. *Rutland*, 1 *Hay'd* 97 ; *Ford* v. *Aikin*, 4 *Rich.* 133 ; *Keene* v. *Macey*, 4 *Bibb* 35, are authorities supporting the view I have taken of this question. *Collins* v. *Loffus*, 10 *Leigh* 10 ; *Slaughter's Adm'r* v. *Tutt*, 12 *Leigh* 156, are decisions to the contrary.

If the son's right to hold the property was complete, he could mortgage it to secure a precedent debt, or one contracted at the time.

Where the father puts the son in possession of household furniture suitable to his station in life, without acquainting him that the transaction is not what on its face it purports to be, and what the world understands it to be, he puts in the power of the son honestly to represent it as his own, and to contract debts on its security, and he should not be allowed to deprive creditors of their security by an *ex post facto* promulgation of his secret intentions. By his own conduct he authorizes the son to assert a property in the goods; and if creditors act upon his assertion, and advance money, or suffer the son to contract a debt on the faith of the property, the father ought not to be permitted to dispute the son's right. In such case the father is bound by the son's declaration as if it were his own.

The question whether F. F. Betts was the owner of the property by gift from his father, should have been left to the jury, with proper instructions. This was not done, and for this cause I think the verdict should be set aside, and a new trial granted.

Verdict set aside.

ELMER, J.   The goods and chattels in dispute, consisting of household furniture, were mortgaged to Archibald J. Rogers, by Frederick F. Betts, November 1st, 1859, and the defendant claims them under that instrument.   If they were the property of the mortgagor, it is admitted that the defendant was entitled to the verdict.

The plaintiff was himself examined as a witness, and testified that he purchased the goods in the spring of 1859, and paid for them.   They were delivered, by his direction, to his son, Frederick F. Betts, who was of age and had recently married, at his dwelling in Jersey City, the rent of which was paid by plaintiff, and they were in the son's possession, and used by him when the mortgage was executed.   He also stated that his son was at that time a clerk in his store, at a salary; that he did not himself exercise any acts of ownership over the goods, nor did he know that his son claimed to own them; that his son was not to refund the price of the goods, nothing being said about it, and there being no writing in reference to them; that he put the goods in his son's house for him to enjoy; knew his son was in debt; put the furniture in the house because he knew he was in debt, and therefore did not give it to him.

It was the instruction of the court to the jury, that there was nothing in the testimony that would enable Frederick F. Betts, the son of the plaintiff, to maintain a claim against the father, Frederick B. Betts, for the goods in question, and therefore persons claiming under the son, by mortgage or bill of sale could not maintain their title as against the plaintiff; and in pursuance of this instruction, the jury rendered a verdict for the plaintiff.   The case therefore turns upon the question, whether, under the circumstances, the jury would have been warranted in finding that the goods were to be considered as a gift from the father to the son; for if they would, it was an error in the court to instruct the jury as it did.

To constitute a gift between living persons, if there be no deed, a delivery and acceptance are necessary.   Both of

these requisites were complied with in this case, unless the testimony of the plaintiff himself, that he did not give his son the goods must be held to preclude the presumption from the facts, that what took place amounted to a gift. Had the father distinctly declared, at the time the goods were delivered, that his intention was not to give, but to loan them; or had the circumstances justified a presumption on the párt of the son, or of others acquainted with them, that a loan, and not a gift was intended, such a conclusion might have been properly come to by the court and jury. But all the circumstances detailed in the evidence, it appears to me, justified the son and others in the conclusion that they .were delivered as a gift. They were purchased by a father of ample means, and placed in the possession of his son, at a time and in the manner fairly entitled to produce that impression. That such would have been the unhesitating conclusion, had not the recent alteration of the law of evidence enabled the plaintiff to testify not only as to what he did, but as to his secret thoughts and intentions, I think cannot be doubted. It was said, in the case of *Hick* v. *Keats*, 4 *B. & C.* 71, *Eng. ed.*, that where money was advanced by a parent to a child, the presumption is that it was an advance by way of gift, and not a loan. And upon the same principle it is held, that a purchase of land in the name of a child is *prima facie* an advancement, and not a resulting trust. *Hill on Trusts*, 97, *note* 1, and numerous cases cited.

Ordinarily, possession of goods is the evidence of ownership, and a delivery completes the title. To permit the object for which a delivery was made to be judged of, not by the actual circumstances under which it took place, but by the secret intentions of the persons making the delivery, would be to introduce a dangerous element of confusion without any corresponding benefit. In the absence of explicit declaration, the parties ˙interested, and those who are called upon to act on or to determine their respective rights, are compelled to judge of their intention by their acts; and this necessity occasions no material difficulty, because generally, according

to the common adage, actions speak louder than words. But what security can there be if actions are to be governed by secret thoughts? If actions may be so governed, upon the same principle words also may be rendered wholly unnecessary and illusory. If the plaintiff can be allowed to turn what would otherwise be deemed a gift into a mere loan or bailment, by declaring that such was his intention, the son may in the same way defeat his acceptance. In my opinion, both parties should be considered as estopped by their acts from setting up a mere secret intention; or, in other words, whatever might have been the intention, not only the son, but those who dealt with him, ought to be protected in acting fairly and *bona fide* upon the presumption naturally arising out of the acts themselves. The broad and just principle upon which the doctrine of. *estoppel in pais* rests is, that admissions which have been acted upon by others, whether they were made in express language or were implied from the open and general conduct of the party, are upon grounds of public policy and good faith, held to conclude the party making them, so that he cannot afterwards repudiate them.

In the cases of *Smith* v. *Montgomery*, 5 *Monr.* 504, and *Keene* v. *Macey*, 4 *Bibb* 35, it appears to have been held by the courts of Kentucky, that where a father put his married daughter in possession of slaves, without any other expression of his object, they still remained his property. But in the state of North Carolina it would seem that precisely the contrary doctrine has been established. *Hallowell* v. *Skinner*, 4 *Ired.* 165; *Farrel* v. *Perry*, 1 *Hay'd* 2; *Carter's Ex'rs* v. *Rutland*, *Ib.* 97 ; *Ford* v. *Aikin*, 4 *Rich.* 133.

It is obvious, however, that a question of this kind depends so much upon the usages at the place, and in reference to the kind of property in question, that these decisions, if they had coincided, instead of being directly opposed, would have been entitled to very little weight.

In my opinion the rule for a new trial should be made absolute, and the question of ownership when the mortgage was executed should be submitted to a jury with instructions,

that if the goods were delivered to the son, in the manner and under circumstances which justified him and others in the inference that they were meant to be a gift, the delivery should be regarded as having that effect, without regard to what were the secret undeclared intentions of the plaintiff.

VREDENBURGH, J., concurred.

VAN DYKE, J., concurred in ordering a new trial.